UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| American Builders Insurance Company f/k/a Association Insurance Company, | )<br>)<br>) |
| Plaintiff, | )  Civil Action No. 2:22-cv-2193-BHH |
| v. | )  **Opinion and Order** |
| Tidal Creek Builders, Inc., Southwind Homes, LLC, Carolina Siding Services, LLC, Jose Dias Rodrigues, Lakeview Commons HOA, Inc., Albert Quinn, and Edward Cumbee, on behalf of themselves and all others similarly situated, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**Introduction and Background**

Plaintiff American Builders Insurance Company f/k/a Association Insurance Company ("Plaintiff") filed this declaratory judgment action against Defendants Tidal Creek Builders, Inc. ("Tidal Creek"), Southwind Homes, LLC, Carolina Siding Services, LLC, Jose Dias Rodrigues, Lakeview Commons HOA, Inc., Albert Quinn, and Edwards Cumbee, on behalf of themselves and all others similarly situated (collectively, "Defendants"),[1] seeking a declaration by the Court that Plaintiff has no duty to defend or indemnify Tidal Creek in an underlying state court action, entitled *Lakeview Commons HOA, Inc., Albert Quinn, and Edward Cumbee, on behalf of themselves and all others*

---

[1] Tidal Creek aside, Plaintiff states that it seeks no relief from the other named defendants, except to bind them to the coverage decisions in this action. (ECF No. 40-1 at 2 n.1.)

*similarly situated, vs. Southwind Homes, LLC et al*., C/A No. 2018-CP-08-02142. (ECF Nos. 35; 40.)

On December 21, 2021, Lakeview Commons HOA, Inc., Albert Quinn, and Edward Cumbee, on behalf of themselves and all others similarly situated, filed a state court action arising out of alleged defective construction of 94 townhomes located in the Lakeview Common neighborhoods in Berkeley County, South Carolina (hereinafter, "the underlying action"). (*See* ECF No. 43-1 at 4-46 (seventh amended complaint, filed July 5, 2023[2]).) In the underlying action, Tidal Creek is alleged to have failed to properly perform the installation of siding and related flashings and components, resulting in water intrusion through the exterior cladding and other damage to components of the property on which Tidal Creek did not perform work. (*Id.* ¶¶ 110, 112-13,119-20.) The following causes of action are asserted against Tidal Creek: negligence / gross negligence and breach of implied warranties. (*See* ECF No. 43-1 at 36-40.) As of the date of this Order, the underlying action remains pending on what appears to be a closed discovery period, with the parties simply awaiting rulings on dipositive motions and, possibly, a trial date. No party disputes that, to date, no findings of fact have been made, no judgment has been entered against any of the parties, and no payment has been made in an attempt to resolve the underlying action.

Now before the Court is Plaintiff's motion for summary judgment. (ECF No. 40.)[3] Plaintiff seeks an order declaring that the insurance policies[4] issued by it to Tidal Creek

---

[2] The Court notes that this complaint appears to be the operative complaint in the underlying action.
[3] Also before the Court, in the event the motion for summary judgment is denied, is Plaintiff's motion to bifurcate "the claims of this case and issue a new scheduling order to address issues relating to indemnity" pursuant to Rule 42(B) of the Federal Rules of Civil Procedure. (ECF No. 39.)
[4] Plaintiff issued the following CGL policies to Tidal Creek: GLP 0198519 00 (9/6/2015 – 9/6/2016), GLP 0198519 01 (9/6/2016 – 9/6/2017), GLP 0198519 02 (9/6/2017 – 9/6/2018), GLP 0198519 03 (9/6/2018 – 9/6/2019), and GLP 0198519 04 (9/6/2019 – 9/6/2020), which are attached to its motion as Exhibit I. (ECF

2

do not provide coverage for the damages sought in the underlying action against Tidal Creek and that Plaintiff is not required to keep defending Tidal Creek in the underlying action.[5] (ECF No. 40-1 at 3, 7.) Specifically, Plaintiff seeks a declaration that there is no "property damage" caused by an "occurrence" that would give rise to coverage and that coverage is barred by the "resulting damage" endorsement in the policies. (*Id.* at 10-15.) In the event the Court declines to grant its motion for summary judgment, Plaintiff requests that the Court stay the instant action pending resolution of the underlying action. (*Id.* at 15.)

In its response in opposition, Tidal Creek argues that the Court should exercise its discretion to stay the instant action until the underlying action concludes. (ECF No. 43 at 1-2.) Tidal Creek notes that, as of July 5, 2023, discovery is ongoing, and a trial date had not yet been set. (*Id.* at 1-2, 7.) Tidal Creek also argues that Plaintiff's duty to defend is "crystal clear" based on the allegations in the operative state court amended complaint, and that a determination of Plaintiff's duty to indemnify is not ripe "because there has been no determination of Tidal Creek's liability for damages or the amount of same in the underlying" state court action.  (*Id.* at 3, 7.)

Lakeview Commons HOA, Inc., Albert Quinn, and Edward Cumbee also filed a response in opposition. (ECF No. 46.) Therein, they, too, argue that the allegations in the underlying action trigger Plaintiff's duty to defend and that a determination of Plaintiff's duty to indemnify is premature "because there has been no factual determination made concerning Tidal Creek's liability" in the underlying action. (ECF No. 46 at 2. *See also id.*

---

No. 40-10.) Because the language at issue here is the same across all policies, the Court cites to just one policy when quoting relevant language.
[5] Plaintiff has been and continues to defend Tidal Creek pursuant to a full reservation of rights. (*Id.* at 7.)

3

at 11 (noting that there has been no settlement or verdict in the underlying action).) They additionally argue that the "resulting damage" endorsement relied upon by Plaintiff to exclude coverage does not apply, or alternatively, is "ambiguous, internally contradictory, and renders coverage illusory," such that the policies must be viewed in favor of coverage for Tidal Creek. (*Id.* at 9-11.)

As an initial matter, the Court notes that, based upon its review, Plaintiff is moving for summary judgment only as to its duty to defend Tidal Creek in the underlying action. (*See generally* ECF No. 40-1. *See also* ECF No. 39 (stating that it "filed a Motion for Summary Judgment requesting the Court issue an Order relieving it of its duty to defend").) Of course, if the Court determines Plaintiff does **not** owe any duty to defend Tidal Creek, then Plaintiff has no duty to indemnify. *Stevens Aviation, Inc. v. Blackhawk Modifications, Inc.*, No. CIV.A. 6:12-3390-BHH, 2015 WL 1486908, at *4 (D.S.C. Mar. 31, 2015). If, however, the Court finds Plaintiff **does** owe a duty to defend Tidal Creek, then Plaintiff's duty to indemnify will remain an issue for ongoing litigation. *See Ellett Bros. v. U.S. Fid. & Guar. Co.*, 275 F.3d 384, 388 (4th Cir. 2001) ("[T]he duty to indemnify is based on evidence found by the factfinder."); *Howard v. Allen*, 176 S.E.2d 127, 129 (S.C. 1970) ("There is no obligation . . . to indemnify until a judgment against the insured is obtained.") Thus, for sake of clarity, the Court agrees with Defendants that the indemnity claim asserted in Plaintiff's amended declaratory judgment compliant is not ripe. However, this claim is not before the Court, as Plaintiff is only moving for summary judgment as to its duty to defend.

Plaintiff's motion for summary judgment is fully briefed and ripe for disposition.

4

**Jurisdiction**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 based on Plaintiff's allegations that there is complete diversity of citizenship between the parties and "the amount in controversy exceeds $75,000." (ECF No. 35 ¶ 8.)

**Standard of Review**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Id.* (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

Where, as here, the Court is presented with the question of whether an insurance policy covers a particular claim, summary judgment is the proper mechanism by which to determine whether coverage is available. *See OneBeacon Ins. Co. v. Metro Ready-Mix, Inc.,* 242 F. App'x 936, 939 (4th Cir. 2007) ("[b]ecause the facts are undisputed and we are presented with a purely legal question of insurance coverage, the case is ripe for summary judgment").

**Insurance Policies**

Coverage A of the CGL policies provides that Plaintiff "will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies." (ECF No. 40-10 at 35.) However, Plaintiff "will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." (*Id.*) The "bodily injury" or "property damage" must be caused by an occurrence, take place in the coverage territory, and occur during the policy period. (*Id.*) "Property damage" is defined as:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured.

(*Id.* at 49.) An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.*)

The policies also include several endorsements that modify coverage. One such endorsement is the "Resulting Damage Coverage" endorsement. It provides:

I.      **Faulty, Defective or Poor Workmanship in Your Work**

This insurance does not apply to any claim or "suit" for the cost of repair, replacement, adjustment, removal, loss of use, inspection, disposal, or otherwise making good any faulty, defective or poor workmanship in "your work" for which any insured or any insured's employees, contractors, or subcontractors may be liable.

This exclusion does not apply to "property damage" sustained by any other property that is caused by the faulty, defective or poor workmanship in "your work".

This exclusion applies only to residential structures for which coverage is not otherwise excluded under this insurance.

(*Id.* at 89.) "Your work" means "[w]ork or operations performed by you or on your behalf; and "[m]aterials, parts or equipment furnished in connection with such work or operations. (*Id.* at 50.) It includes "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work'" and "[t]he providing of or failure to provide warnings or instructions." (*Id.*)

### Analysis

"[U]nder South Carolina law, '[q]uestions of coverage and the duty of a liability insurance company to defend a claim brought by an insured are determined by the allegations in the (underlying) complaint.'" *Auto Owners Ins. Co. v. Pers. Touch Med Spa, LLC,* 763 F. Supp. 2d 769, 776 (D.S.C. 2011) (quoting *City of Hartsville v. S.C. Mun. Ins. & Risk Fin. Fund*, 677 S.E.2d 574, 578 (2009)). "If the underlying complaint creates a possibility of coverage under an insurance policy, the insurer is obligated to defend." *City of Hartsville*, 677 S.E.2d at 578. "South Carolina law requires that a triggered insurer with a duty to defend the policyholder in a suit must defend the policyholder against all claims in that suit, even those claims that are not covered under the policy." *Cincinnati Ins. Co. v. Crossmann Cmtys. of N. Carolina, Inc.*, No. 4:09-cv-1379-RBH, 2013 WL 1282017, at *11 (D.S.C. Mar. 27, 2013). "[T]he duty to defend may also be determined by facts outside of the complaint that are known by the insurer." *Hartsville*, 677 S.E.2d at 578 (quoting *USAA Prop. & Cas. Ins. Co. v. Clegg*, 661 S.E.2d 791, 798 (2008)).

It is well established in South Carolina that insurance policies are subject to general rules of contract construction. *B.L.G. Enters., Inc. v. First Fin. Ins. Co.*, 514 S.E.2d 327, 330 (1999). "When a contract is unambiguous, clear and explicit, it must be construed according to the terms the parties have used." *Id.* A court must enforce, not

write, contracts of insurance and must give policy language its plain and ordinary, and popular meaning. *Id.*

Generally, policy exclusions are construed strongly in favor of coverage and the insurer bears the burden of establishing the exclusion's applicability. *M & M Corp. of S.C. v. AutoOwners Ins. Co.*, 701 S.E.2d 33, 35 (2010). "However, if the intention of the parties is clear, courts have no authority to torture the meaning of policy language to extend coverage that was never intended by the parties." *S.C. Farm Bureau Mut. Ins. Co. v. Wilson*, 544 S.E.2d 848, 850 (Ct. App. 2001) (*quoting Sphere Drake Ins. Co. v. Litchfield*, 438 S.E.2d 275 (Ct. App. 1993)).

As noted above, Plaintiff is currently defending Tidal Creek under the policies pursuant to a full reservation of rights. Plaintiff now moves for summary judgment, arguing that it has no obligation to defend Tidal Creek, on two grounds: (1) there is no evidence of any "property damage" caused by an "occurrence" that would give rise to coverage under the policies; and (2) the "resulting damage" endorsement excludes coverage. (ECF No. 40-1 at 10-14.) Plaintiff relies on the factual conclusions drawn from the opinions of the expert it identified in this action – Michael E. Gogel. In arriving at his opinions, Mr. Gogel reviewed documents produced in the underlying action, to include Lakeview HOAs' expert's report and opinions, select deposition testimony and invoices, and a cost estimate. Defendants did not identify an expert in the instant action. (*Id.* at 11 n.3.) Thus, Plaintiff argues that "there is no evidence that any expert can testify to in this action to support a finding [that Tidal Creek] and/or its subcontractors' faulty workmanship caused damage to other property that would bring this claim within coverage." (*Id.* at 11.)

In response, Defendants argue that Plaintiff's duty to defend is clear based on the allegations in the underlying seventh amended complaint.

After review of the pertinent law, the Court finds that Plaintiff's "arguments do not affect [its] duty to defend, as they pertain to factual issues outside of the [seventh amended] [c]omplaint[] in the underlying action. *Owners Ins. Co. v. Charleston Glass & Mirror, Inc.*, No. 2:14-cv-3649-RMG, 2015 WL 13817537, at *5 (D.S.C. Oct. 7, 2015). It is well established that to determine if an insurer has a duty to defend, the Court looks to allegations made in the operative complaint in the underling action and the language of the relevant insurance policy. *Id.* Here, the policies provide coverage for "property damage" defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property . . . or [l]oss of use of tangible property that is not physically injured." (ECF No. 40-10 at 49.) This damage must occur during the policy period, between September 6, 2015, and September 6, 2020. (ECF No. 40-1 at 7; *see generally* ECF No. 40-10.)

The seventh amended complaint alleges that "Tidal [Creek] performed the installation of siding and related flashings and components at the Property," and that the underlying defendants' work, including Tidal Creek's work, was "defective" and "in violation of the applicable building code, industry standards, plans, specifications, manufacturers installation instructions, and industry standards of care. (ECF No. 43-1 ¶¶ 110-115, 225.) The complaint further alleges that this defective work "caused water intrusion through the exterior cladding in addition to other damages," such as "loss of use and enjoyment of the Property." (*Id.* ¶¶ 113-117.) The complaint specifies that the underlying defendants, including Tidal Creek, were negligent in failing "to construct the

9

Property so as to make the exterior building envelope air and water tight" and "to properly install the exterior cladding, weather barrier, flashings, and related components." (*Id.* ¶ 225b-c.)

Viewing broadly these allegations contained in the seventh amended complaint, the Court finds that a "possibility of coverage exists." *City Hartsville*, 677 S.E.2d at 578. *See also Owners Ins. Co.*, 2015 WL 13817537, at *5 (finding same in a constructive defective case after analyzing identical policy language and nearly identical allegations). Thus, Plaintiff has a duty to defend Tidal Creek in the underlying action. Notably, just as Plaintiff argues here, the insurer in *Owners Ins. Co.* argued that it had no duty to defend based on an exclusion in a CGL policy that provided there would be no coverage for property damage to ""[t]hat particular part of real property on which you ... are performing operations, if the 'property damage' arises out of those operations[,] or [t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." *Id.* at *5. While the court recognized the validity of this exclusion, it found the exclusion did not preclude finding a duty to defend. *Id.* This Court finds that the similar "resulting damage" endorsement, set forth above, does not preclude finding a duty to defend. In so holding, the Court adopts the sound reasoning of Judge Gergel in *Owners Ins. Co.*:

> The [seventh amended [c]omplaint[] do[es] not allege that the damage allegedly caused by [Tidal Creek] is contained solely to the [siding] and [related flashing and components] that [Tidal Creek] installed. Rather, the allegations of "inadequate water barriers" indicate that the water damage extended beyond the materials installed by [Tidal Creek]. Because there is a possibility of damage to materials beyond the property on which [Tidal Creek] performed work, the Court finds that [Plaintiff] has a duty to defend [Tidal Creek] in the underlying state action[].

10

*Id.* Accordingly, because the allegations contained in the seventh amended complaint in the underlying action trigger Plaintiff's duty to defend, the Court denies Plaintiff's motion for summary judgment as to the issue of Plaintiff's duty to defend Tidal Creek.

## Conclusion

For the reasons stated herein, the Court **denies** Plaintiff's motion for summary judgment. (**ECF No. 40**.) Since all that remains to be determined in this declaratory judgment action is the issue of Plaintiff's duty to indemnify, the Court hereby **stays this action** pending resolution of the underlying state action. *See Owners Ins. Co.*, 2015 WL 13817537, at *7 (analyzing the *Quarles and Nautilus* factor in a similar case and finding that a stay of the indemnity issue pending resolution of the underlying state actions appropriate). Also, given the stay, the Court finds as **moot** Plaintiff's motion to bifurcate. (**ECF No. 39**.)

**While this matter is stayed, the parties are hereby directed to file a joint status report with the Court every 90 days.**

IT IS SO ORDERED.

/s/ *Bruce Howe Hendricks*
United States District Judge

February 16, 2024
Charleston, South Carolina

11